D. P. R. ISENBERG, W. H. CORNWELL and S. I. SHAW,
Doing business as The Hawaiian Hotel Stables, *vs.* ELIZA-
BETH K. CUMMINS.

EXCEPTIONS.

HEARING, MARCH 30, 1891. DECISION, MAY 1, 1891.

JUDD, C.J., McCULLY, BICKERTON, DOLE, JJ.

An infant who hires a horse for pleasure driving is not liable for damages
for the death of a horse, it appearing that the horse died from immo-
derate and careless driving merely, and not in consequence of a will-
ful tort on the part of the infant bailee.

OPINION OF JUDD, C.J., AND McCULLY, J.

The facts of the case are substantially as follows :

At about 2:30 o'clock on Sunday afternoon, the 21st Septem-
ber, 1890, the defendant, then within a few days of her majority,
engaged by telephone of the plaintiffs' stables a horse and phae-
ton for a pleasure drive. There was nothing said as to the
length of time of hiring or the particular course to be taken.
The defendant drove the horse during the afternoon, having her
sister in the phaeton with her, and part of the time a third pass-
enger, and the horse was returned to the stables at about 6 P. M.
in an exhausted condition. The animal refused his food and
though a veterinary surgeon was called in he died within three
days, apparently from the overdriving. The drive was a long
one, to the Park three times and back and up to Judd street
and Kapalama, in all from 35 to 40 miles within the space of
four hours. The horse was a free one and did not need whip-
ping nor urging. There is no evidence that it was raced or
cruelly treated, except that it was undoubtedly driven beyond
its power of endurance. The defence set up was infancy. The
verdict was for plaintiff, $200 damages, and it is excepted to by

defendant as being contrary to the law and evidence. Under objection by the plaintiffs, the jury were instructed by the Court that "in order to hold the infant defendant they must find the injury to the animal to have been willfully and intentionally committed, but that they might find the willful intent from the surrounding circumstances and not necessarily from declarations, none such having been proved."

The question is whether the evidence sustains the verdict or whether the jury clearly ignored the law.

The law was correctly given to the jury : " To render an infant, who has hired a horse, liable in an action for trespass, he must do some willful and positive act which amounts to an election on his part to disaffirm the contract : a bare neglect to protect the animal from injury and return it at the time agreed upon is not sufficient." " If he willfully and intentionally injure the animal, an action of trespass will lie against him for the tort, but not if the injury complained of occurred in the act of driving the animal through his unskillfulness and want of knowledge, discretion and judgment."

*Moore vs. Eastman*, 8 Supreme Court New York, 578. The Court in this case says : "Acts however aggravated, which merely establish a breach of contract on the part of the infant, manifestly are insufficient. The plaintiff cannot convert anything that arises out of a contract into a tort and then seek to enforce the contract, through the medium of an action *ex delicto*. There must be a tort independent of the contract. * * * The tort cannot be predicated of a use of the animal in the course of his bailment, however excessive, unless the excess was such as to indicate that it was resorted to for a purpose beyond that for which the horse was hired."

In *Eaton vs. Hill*, 50 N.H., 235, the horse was hired by an infant for a short journey, who drove him so carelessly and immoderately as to cause his death. The Court say : " When the infant stipulates for ordinary skill and care in the use of the thing bailed, but fails for want of skill and experience, and not from any wrongful intent, it is in accordance with the policy of the law that his privilege, based upon. his want of capacity to

make and understand such contracts, should shield him." "We think then that the doctrine is well established, that an infant bailee of a horse is liable for any positive and willful tort done to the animal distinct from a mere breach of contract— as by driving to a place other than the one for which he hired, refusing to return him on demand after the time has expired, willfully beating him to death, and the like; so if he willfully and intentionally drive him at such an immoderate speed as to seriously endanger his life, knowing that it will do so."

In this connection it must be remarked that in the case before us there is not only no tortious act of defendant proven, but her evidence and that of her fellow passengers is that there was nothing in the horse's condition during the drive to attract their attention; that they were laughing and having a good time and were not paying much attention to the horse.

In *Towne vs. Wiley*, 23 Vt., 355, an infant hired a horse for the purpose of going to B. and returning the same day. He went to B., but returned by a circuitous route which nearly doubled the distance, and stopped at a house upon the way, leaving the horse without food or shelter from 8 o'clock in the evening until 4 o'clock the next morning; and from this over-driving and exposure the horse died. It was held "that when property is bailed to an infant his infancy is a protection to him for any non-feasance, so long as he keeps within the terms of the bailment. But when he departs from the object of the bailment, it amounts to a conversion of the property, and he is liable to the same extent as if he had taken the property in the first instance without permission." The Court found the infant liable in damages for the death of the horse. There was a clear departure from the contract of hiring, for the bargain was for a trip to B. and return the same day, presumably by the ordinary route and not by the circuitous one taken, and this and the stopping over night was a conversion. The action was brought in trover, but the form of the action makes but little difference. In *Jennings vs. Randall*, 8 Term, 335, the Court held that a plaintiff cannot convert an action founded upon a contract into a tort, so as to charge an infant defendant.

The governing principle derived from the cases is this : an infant ( whether of tender years or near his majority, it makes no difference ) cannot be held liable on a contract : if the contract of bailment be made, however, by the infant and the implied stipulation, that ordinary skill and care will be used in the use of the thing bailed, is broken by want of skill, discretion and experience on the part of the infant, his infancy is a complete defense, even though his careless and immoderate use of the chattel within the lines of the bailment caused the injury or destruction of the chattel. An infant can only be held liable for his positive, willful and tortious act, and a careful review of the evidence in the case before us convinces us that nothing of this kind was shown to the jury, and therefore the verdict was wrong and should be reversed and a new trial ordered, which is done accordingly.

*C. L. Carter*, for plaintiffs.

*F. M. Hatch*, for defendant.

---

An infant who hires a horse for pleasure driving is liable in damages for injury to the horse arising from immoderate driving, if it appears that the same was willful on her part.

Evidence of age and experience of the infant may be considered by the jury on the question of willful disregard of the implied stipulation for ordinary care.

OPINION OF BICKERTON AND DOLE, JJ., BY DOLE, J.

We adopt the statement of the case from the opinion of the other two Justices, from whose conclusions, however, as to the law of the case we disagree.

The charge of the Presiding Justice to the jury, that "in order to hold the infant defendant they must find the injury to the animal to have been willfully and intentionally committed, but that they might find the willful intent from the surrounding circumstances, and not necessarily from declarations, none such having been proved," was undoubtedly correct.

We find the following testimony, bearing on the injurious treatment of the horse, in the statement of evidence of the bill of exceptions.

"Very free horse; was about medium on the bit; would pull on the bit some; was fit for a lady." (By S. I. Shaw, one of the plaintiffs.)

"I was there when (horse) came in, 7:30 P. M.; was in very exhausted condition; sweaty all over. He walked when he came in as if exhausted; he hung his head. As soon as he got in the stall he lay down. He got up in a little while and lay down again. Would not take water; ate a little manienie the next day. His mouth was dry when he came in. Defendant had had the horse several times before; defendant has got horses from five or six times during two or three months previous to that date." (By J. Shaw.)

"Am night watchman at Hawaiian Hotel Stables; I recollect when the horse came in; came in about six; I noticed the horse was very tired; something the matter with him; not there over a minute when he lay down. Horse breathed hard; would not eat; would drink a swallow or two. Mouth was very dry when I washed it out." (J. W. Skinner.)

"Am a veterinary surgeon; saw the horse Sunday evening. He was in a state of great exhaustion; remained so until he died. Saw him between 6 and 6:30; was in a box stall breathing rapidly; tongue very parched; pulse rapid and weak. I considered it a case of over-exertion; no symptoms of foundering. Foundering comes from a hard drive on a hard road, and being fed or watered before being cooled off. First symptom of foundering is a stiffening of gait; high fever, rapid breathing, a dry mouth is symptom of fever in a horse. A rapid pulse is also a symptom of fever. Horses may live for a few days if over-exertion is the cause of death. They often drop dead. The pulse was very rapid and very weak. Horse forty-five to fifty pulse per minute. Young animal's pulse more rapid. This horse's pulse was over seventy at the time. I believe his bowels were paralyzed. His spine seemed to be affected. In my opinion he died from over-driving. The night watchman

16

pointed out several whip marks, and don't know how many, more than one." (By A. R. Rowat.)

" Saw horse brought back tired ; almost fell down." (By Tom King.")

" Received horse at my house after 2 P. M.; my residence is at Kewalo. Condition of horse was then somewhat heated up. Asked boy who fetched horse if he had driven it hard. I asked him because I saw horse's mouth was full of froth. I drove out . to Waikiki with my sister. After that I drove home and was there about fifteen minutes ; thence went to ice-cream parlors and to Waikiki again. Picked up Ed. Stiles on the way. On return went up to Sam Ladd's ; was there about ten minutes. Thence to Judd street, down Liliha street to School street and then drove up to slaughter house at Kalihi. From there out to Kapiolani Park and back to house. When first went out to Waikiki horse was full of froth. Went home and rubbed it down, after which it became all right. I was eighteen last October. When Mr. Stiles jumped on I let him drive. We were all talking and laughing and having a good time and not paying any particular attention to the horse." (By E. K. Cummins, defendant.) '

"Had charge of the horse when I jumped in; drove it slowly; whipped it occasionally, not hard." (By E. Stiles.)

The question before us is, was there evidence in support of the verdict?

The contract of an infant may not be enforced by the other party unless it is affirmed by the infant upon becoming of age. But the principle is generally recognized that where an infant makes a contract by which he has the use of something for a time, and disaffirms the contract, he then becomes liable in tort to the other party for the article hired.

In the case before the Court it was necessary, before the jury could find for the plaintiff, that there should be evidence showing a disaffirmance of the contract on the part of the defendant. Is there such evidence?

A contract of hiring, like the one in question, implies a covenant to exercise ordinary care and skill to protect the animal

from injury. If the evidence shows that the infant, after obtaining possession of a horse under such contract, willfully abuses and injures it, it is a tort and he is liable for it. 1 Parsons on Contracts, 263. In the case of *Wentworth vs. McDuffie*, 48 N. H., 402, which was an action of trover against an adult for driving a hired horse so immoderately that she died, the Court held that "the act of the bailee in willfully and intentionally driving the horse at such an immoderate rate of speed as he knew would seriously endanger the life of the horse is at least as marked an assumption of ownership and as substantial an invasion of the bailor's right of property as the act of driving the horse at a moderate rate of speed one mile beyond the place named in the contract of hiring." This applies to the case before us, for the defendant being an infant does not affect the principle of this authority, infants being liable for torts. The defendant hired the horse under an implied stipulation for ordinary care and diligence to protect the horse from injury. She was not limited by the contract as to time or distance. If she willfully drove the horse such a distance at such a speed as was likely to injure him, and he was so injured, it was a conversion, and she was liable. Whether she willfully so drove the horse was a question for the jury on the evidence, if there was evidence on this point. The counsel for the defense argues that there was no such evidence submitted to the jury, and claims that if the injury resulted from overdriving, it was on account of want of judgment, or from heedlessness and want of knowledge.

That part of the evidence quoted above shows that the defendant was within a few weeks of being of age, and that she was accustomed to take out driving horses; the evidence that she noticed the condition of the horse when it was delivered to her, and that after her first trip to Waikiki, noticing that the horse was "full of froth," she went home and had it rubbed down, shows that to some extent she understood the care of horses. Here was evidence directly bearing on the defense of heedlessness and want of experience and judgment. Together with this, and as bearing on the same question, the question

whether the injury resulted from willfulness or a want of discretion, is the other evidence of injurious treatment, substantially as follows: A free horse, pulling some on the bit, is driven in about three'hours and a half to Waikiki, back to Honolulu, to Waikiki again, back to Honolulu, up to Judd street, down Liliha street and out King street to the slaughter-houses at Kahili, thence to Kapiolani park and back to Honolulu, is occasionally whipped during the driving, is returned to the owners in a state of great exhaustion and high fever, and in three days dies in consequence of over-driving, in the opinion of the surgeon who attended him.

From this evidence, both of improper treatment and of knowledge and discretion on the part of the defendant, the jury rendered a verdict for the plaintiff. We are satisfied that there was evidence before them which justified them in presuming that the injury was willful.

" It seems on principle that where a particular intention, knowledge or state of mind in the person charged as a wrongdoer, is an element, as it sometimes is, in constituting the alleged wrong, the age and mental capacity of the person may and should be taken into account, along with other relevant circumstances, in order to ascertain as a fact whether that intention, knowledge, or state of mind was present." 6 Pollock's Law of Torts, 35.

The decision appealed from, overruling the motion for a new trial, should be sustained.

---

Note.—The Court being equally divided on the question of the liability of the defendant, the verdict of the jury stands.